The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.




Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| JAMES MARK WENGERD AND | ) | CASE NO. 09-62720 |
| CHERYL SUE WENGERD, | ) | |
| | ) | ADV. NO. 09-6139 |
| Debtors. | ) | |
| | ) | JUDGE RUSS KENDIG |
| UNITED STATES TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OF OPINION** |
| | ) | **(NOT INTENDED FOR** |
| JAMES MARK WENGERD AND | ) | **PUBLICATION)** |
| CHERYL SUE WENGERD, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

On October 18, 2010, the court held a trial on the United States Trustee's ("UST") adversary complaint to deny Debtors' discharge.

The court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. 157(b)(2)(J). The following constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

1

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

## FACTS

As a result of the economic downturn, Debtors commenced a joint chapter 7 case on July 3, 2009. Debtor James Wengerd is a high school graduate who worked most of his life in the construction industry, initially as a laborer. In approximately 2000, he and his brother started Wengerd Custom Homes. Over the next eight-plus years, they built and sold 250-300 homes in northeast Ohio. Debtor was in charge of operations and was the person responsible for signing the master contract between the home buyer and Wengerd Custom Homes. He also helped buyers design their homes. At one point, the business employed eight people. As a result of this work, Debtor James Wengerd was knowledgeable of real estate sale transactions.

Debtor Cheryl Wengerd is also a high school graduate. At trial, she worked two jobs, one as a teller and one at a nursery. In 2008, she opened a Christian bookstore which closed in 2009.

Following a steep decline in business and the loss of income from Wengerd Custom Homes, Debtors experienced financial difficulty. They consulted bankruptcy counsel in the spring of 2009. Debtors owned real estate at 14654 Duquette Ave., N.E., Hartville, Ohio. The home was not fully encumbered. Debtors put their home up for sale by owner in May 2009. The house sold very quickly, in approximately two weeks. Robin Pratt, the buyer, agreed to Debtors' asking price of $205,000.00. The sales contract was signed by Debtors on May 27, 2009, with a proposed a possession date of July 13, 2009. The sale closed on July 7, 2009.

Debtors signed their bankruptcy petition, schedules and related documents on July 1, 2009, six days prior to closing. Debtors did not disclose information about the pending sale in the documents. Each debtor claimed a homestead exemption of $20,200.00 in the property.

Debtors moved to Kansas in mid-July, post-petition, where Mr. Wengerd attends Bible college. They did not file a change of address with the court until September 1, 2009.

While reviewing for the Debtors' 341 meeting, Lisa M. Barbacci, the chapter 7 trustee ("Trustee"), independently discovered the transfer of the property. When Debtors appeared at the 341 meeting, they provided a settlement statement. Debtors received approximately $35,000.00 from the sale. Debtors did not segregate the funds, nor did they turn the money over to Trustee. They spent the money on living expenses and none of the money remains. Debtors consistently maintained that the money was not part of the

bankruptcy estate because it was exempt.[1]

## LAW AND ANALYSIS

UST's complaint contains four counts, three under 11 U.S.C. § 727(a)(2)(B) and one under 11 U.S.C. § 727(a)(4)(A). All of the counts are premised on the same basic facts: the sale of the house, its transfer, and the dissipation of the proceeds. On the section 727(a)(2)(B) counts, UST argues that Debtors sold and/or transferred the real estate, and the proceeds of the sale, with the intent to hinder or delay the trustee and creditors. Section 727(a)(2)(B) reads

> (a) The court shall grant the debtor a discharge, unless--
>
> (2) the debtor, with an intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
>
> (B) property of the estate, after the date of the filing of the petition.

Trustee bears the burden of proof, by a preponderance of the evidence, on a section 727(a)(2)(B) claim. *See* Barclays/Am. Bus. Credit, Inc. v. Adams (In re Adams), 31 F.3d 389 (6th Cir. 1994).

Few Sixth Circuit cases discuss section 727(a)(2)(B). However, there is coverage under its sister provision, 11 U.S.C. § 727(a)(2)(A). That provision is the basis for denying discharged when the disposition of a debtor's property occurs prepetition. On the analogous provision, the Sixth Circuit stated

> [t]his section encompasses two elements: 1) a disposition of property, such as concealment, and 2) "a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act of disposing of the property." Hughes v. Lawson (In re Lawson), 122 F.3d 1237, 1240 (9th Cir. 1997).

---

[1] On October 14, 2010, the court ruled against Debtors on this point, finding that Debtors prepetition conduct demonstrated an intent to abandon the property, so Debtors were not entitled to claim a homestead exemption in property they did not intend to use as a residence. The decision is on appeal to the BAP.

3

Keeney v. Smith (In re Keeney), 227 F.3d 679 (6th Cir. 2000). The differences between provisions led other courts to convert the additional requirements of subsection (B) into a four part test:

> (1) the debtor transferred or concealed property, (2) such property constituted property of the estate, (3) the transfer or concealment occurred after the filing of the bankruptcy petition, and (4) the transfer or concealment was made with the intent to defraud the bankruptcy trustee. Hunter v. Sowers (In re Sowers), 229 B.R. 151, 156 (Bankr. N.D. Ohio 1998); see also Keeney v. Smith (In re Keeney), 227 F.3d 679, 683 (6th Cir. 2000) (creating an analogous two-part test for denial of discharge under § 727(a)(2)(A)).

Helbling v. Holmes (In re Holmes), 2008 WL 6192253 * 3 (Bankr. N.D. Ohio 2008). Utilizing this four-part test, Debtors' post-petition transfer of the real estate, constituting property of the estate, is undisputed. Therefore, the court needs only focus on the intent element.

As stated, the requisite standard is subjective. Keeney, 227 F.3d at 683 (citation omitted). Intent may be inferred from the circumstances. Id. at 684 (citing In re Snyder, 152 F.3d 596 (7th Cir. 1998)). The Holmes court opined

> [T]he fraud in question must be fraud in fact, not constructive fraud. See Sowers, 229 B.R. at 157. Courts have held that fraudulent intent can be found where the defendant demonstrates "reckless disregard or indifference for the truth." Heil, 289 B.R. at 908; see also Sayre, 321 B.R. at 427. The Court may deduce such behavior from the facts and circumstances of the case. A pattern of omissions on the part of the debtor is often sufficient to find fraudulent intent, but an innocent mistake or error will not suffice. Keeney, 227 F.3d at 686; see also Heil, 289 B.R. at 908; Olsen v. Slocombe (In re Slocombe), 344 B.R. 529, 536 (Bankr. W.D. Mich. 2006).

Holmes, 2008 WL 6192253 at * 4.

Debtors cannot deny that the transfer of the property was intentional. What they deny is that they did not intend to hinder, delay or defraud the trustee with the transaction. The court finds this implausible. The circumstances establish, at a minimum, a reckless disregard for, or indifference to, the trustee and creditors in this case.

4

Debtor are not unsophisticated. Each operated his or her own business. Debtor James Wengerd was directly involved in the real estate industry, via the construction business, his entire working life. Yet they attempt to convince the court that they did not believe the sale of his house mattered because they could protect the equity. Equally disturbing is the coincidental fact that Debtors listed the house for an amount to maximize the exemption and allow no return to the unsecured creditors. The house was valued at $205,000.00 on the schedules, with claims against it totaling approximately $165,000.00. Debtors claimed exemptions totaling $40,400.00.

Debtors listed the house for sale by owner. In this economy, in the worst real estate market in decades or lifetimes, the house sells in two weeks, for the asking price determined by Debtors.

Debtors consulted bankruptcy counsel prior to listing the house for sale. Yet when they actually filed bankruptcy, they did not think to mention that the house was under contract. Not when they reviewed Schedule A, or Schedule D, or Schedule G, nor when they signed the papers. At no point did they think it meaningful to note or mention they were about to transfer their most valuable asset and receive in the neighborhood of $35,000.00.

At the time of filing, they knew they were intending to move to Kansas, yet did not note this on Schedule I or J. Further, they did not file a change of address with the court until September 1, 2009. As Trustee noted, a timely change of address should have alerted her to question what was happening with their residence (which had $40,000.00 of claimed equity).

Days after receiving the proceeds from the sale, they take the proceeds and move to Kansas. No change of address is filed with the court. Debtors are living by using the proceeds of the sale of the house, none of which is invested in a homestead.

The court is literally unable to conceive of this course of action as simple error or an innocent mistake. Debtors behaved in a manner to avoid scrutiny until it was too late. The court determined that the purchaser purchased in good faith, so the trustee cannot avoid the sale and the money is gone. The result of the concealment of the sale, and transfer of the property, was to create a situation where the trustee could not determine if the sale price was reasonable, could not examine the validity of the liens, and could only challenge the homestead exemption after fact. Even when an issue with the proceeds became apparent, Debtors did nothing to segregate or protect the funds, but continued to churn through them. Debtors have been completely indifferent to the rights of the trustee and their creditors.

Denial of discharge is appropriate under 11 U.S.C. § 727(a)(2)(B). There is no reason to also explore section 727(a)(4)(A).

5

09-06139-rk    Doc 35    FILED 12/06/10    ENTERED 12/06/10 09:42:36    Page 5 of 6

An appropriate order will be entered immediately.

# # #

**Service List:**

Dean P Wyman
United States Trustee
Suite 441
H.M. Metzenbaum U.S. Courthouse
201 Superior Ave.
Cleveland, OH 44114

Michael V. Demczyk
12370 Cleveland Ave NW
PO Box 867
Uniontown, OH 44685

6